UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CHRISTOPHER YANG and                                    CIV. NO. 13-846 (JNE/JSM)
LISA YANG,

       Plaintiffs,

v.                                                      <u>REPORT AND RECOMMENDATION</u>

FEDERAL HOME LOANS MORTGAGE CORPORATION,
JPMORGAN CHASE BANK, N.A.,
HOMEWARD RESIDENTIAL, INC. and also all
other persons, unknown claiming any right,
title, estate, interest, or lien in the real
estate described in the complaint herein,

       Defendants.

This matter came before the undersigned on defendants Federal Home Loans Mortgage Corporation and J.P. Morgan Chase Bank, N.A.'s Motion to Dismiss [Docket No. 5] and Homeward Residential, Inc.'s Motion to Dismiss [Docket No. 13]. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(A), (B) and Local Rule 72.1(c). Pursuant to this Court's Order dated September 6, 2013 [Docket No. 15] this Report and Recommendation is being issued based on the parties' written submissions.

Plaintiffs seek to invalidate the foreclosure of the mortgage on their home. Plaintiffs assert three claims against defendants: (1) quiet-title, to determine adverse claims under Minn. Stat. § 559.01; (2) declaratory judgment; and (3) slander of title. For

the reasons below, the Court recommends that defendants' Motions to Dismiss be granted and plaintiffs' claims be dismissed with prejudice.[1]

## I.    BACKGROUND

### A.    Facts

On May 19, 2013, plaintiffs, sued defendants in state court.  Notice of Removal, Ex. Attach. 1 (Complaint) [Docket No. 1-3].  Defendants removed the suit to federal District Court on April 11, 2013, pursuant to 28 U.S.C. §1332(a).  Notice of Removal [Docket No. 1].

The facts bearing on the motion to dismiss are as follows.  On April 17, 2007, plaintiffs executed a note to Washington Mutual Bank, FA ("WAMU") on property located in Ramsey, Minnesota ("Property").  See Complaint [Docket No. 1-1], ¶¶1, 6. On the same day, plaintiffs executed a mortgage in favor WAMU.  Id., ¶ 6, Ex. 1 (Mortgage).  The mortgage was recorded with Anoka County on May 9, 2007.  Id. WAMU was listed as the Lender, which was the mortgagee pursuant to the mortgage. Id.  "Upon information and belief, Washington Mutual Bank, FA originated the loan for delivery to Federal Home Loan Mortgage Corporation."  Id., ¶ 9.  A screen shot dated February 28, 2013, purportedly from the Federal Home Loan Mortgage Corporation ("Freddie Mac") states: "Yes.  Our records show that Freddie Mac is the owner of your

---

[1]    In the caption of the Complaint, plaintiffs also purport to sue "all other persons unknown claiming any right, title, estate, interest, or lien in the real estate described in the complaint herein."  As "[t]here are no factual allegations sufficient to identify these unnamed defendants or state a claim against them;" the Court therefore recommends that all claims against them be dismissed.  See Sonsalla v. Mortg. Elec. Registration Sys., Inc., Civ. No. 13-659, 2013 WL 4052825, *1 (D. Minn. Aug. 9, 2013) (citing Estate of Rosenberg ex rel. Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir.1995) (affirming dismissal of unidentified defendants about whom no factual allegations were made)).

mortgage and it was acquired on May 23, 2007." Id., ¶¶ 8, 10, Ex. 2 (screen shot).  The assignment of the mortgage from WAMU to Freddie Mac does not appear in the records of the Anoka County Recorder.  Id., ¶ 10.

Plaintiffs claim that according to Freddie Mac's Custodial Agreement, a seller or servicer must deliver to the custodian a prepared and executed assignment of the security instrument from the seller or servicer to Freddie Mac in recordable form but not recorded.  Id., ¶ 12, Ex. 3 (Blank and Undated Custodial Agreement).   Plaintiffs also claim that pursuant to this agreement, WAMU, as the predecessor in interest to defendant J.P. Morgan Chase Bank, N.A. ("Chase"), prepared and delivered an assignment of the mortgage to Freddie Mac, which gave to Freddie Mac the power of sale contained in the Mortgage.  Id., ¶ 13.

On June 18, 2008, Chase appointed Usset, Wengarden & Liebo, P.L.L.P. ("Usset") as its attorney-in-fact by virtue of the Limited Power of Attorney, which was recorded in the Anoka County Office of the Recorder on July 28, 2008.  See Declaration of Paul A. Weingarden, Ex. A (Limited Power of Attorney).

The acquisition of WAMU's assets by Chase was documented by a Purchase and Assumption Agreement dated September 25, 2008.  See Declaration of Phillip J. Ashfield ("Ashfield Decl."), Ex. 2 (Purchase Agreement from http://www.fdic.gov/about/ freedom/Washington_Mutual_P_and_A.pdf.).

On June 21, 2012, Brian H. Liebo, a partner in Usset, executed[2] a Notice of Pendency to Foreclose Mortgage, which empowered Usset on behalf of Chase to foreclose on the Property and to bid for the Property at the foreclosure sale.  Id., ¶ 16,

---

[2]     While the Notice of Pendency is dated June 21, 2012, the public notary attested that the document was executed by Liebo on June 26, 2012. Id., Ex. 4.

Ex. 4 (Notice of Pendency to Foreclose Mortgage).  This Notice of Pendency was recorded in the Anoka County Office of the Recorder on July 5, 2012.  Id.  "Upon information and belief, Brian Liebo did not have legal authority to execute the 06/21/12 [Notice of Pendency] at the time he executed it."  Id., ¶ 17.  In addition, plaintiffs claimed that Chase did not have any interest in the Property given the unrecorded assignment to Freddie Mac and the June 21, 2012 Notice of Pendency was not recorded as required by Minn. Stat. § 580.05.  Id.

On July 19, 2012, Chase, through Usset, noticed a Sheriff's Sale for the Property, which notice was first published on July 27, 2012.  Id., ¶ 21, Ex. 6 (Sheriff's Certificate of Sale and Foreclosure Record).

On August 30, 2012, Melissa Haynes, as Vice President of Chase, executed a Notice of Pendency and Power of Attorney, which empowered Usset on behalf of Chase to foreclose on the Property and to bid for the Property at the foreclosure sale.  Id., ¶ 19, Ex. 5 (Notice of Pendency and Power of Attorney).   The document was recorded in the Anoka County Office of the Recorder on September 7, 2012.  Id.  "Upon information and belief, Melissa Haynes did not have legal authority to execute the 08/30/12 POA at the time he [sic] executed it as JPMorgan Chase Bank, N.A. did not have any interest in the property as there exists an unrecorded assignment of mortgage to Freddie Mac."  Id., ¶ 20.

On September 12, 2012, Chase, through Usset, conducted the sale of the Property.  Id., ¶ 21, Ex. 6 (Sheriff's Certificate of Sale and Foreclosure Record).  The Sheriff's Certificate of Sale and Foreclosure Record was recorded in the Anoka County Office of the Recorder on September 13, 2012.  Id.  Plaintiffs alleged the "Certificate of

Sale clearly states that the Mortgage debt had been extinguished." Id.  Plaintiffs further claimed that "[u]pon information and belief, prior to the Sheriff's Sale, JPMorgan Chase Bank, N.A. transferred the power of sale to Freddie Mac through an unrecorded assignment of mortgage." Id., ¶ 22.

On October 6, 2012, after the foreclosure sale, Keisha Hudson, as Vice President of Chase, executed an Assignment of Mortgage, assigning from Chase to defendant Homeward Residential, Inc. ("Homeward Residential") all beneficial interest in the mortgage. Id., ¶ 23, Ex. 7 (Minnesota Assignment of Mortgage).  The assignment was recorded in the Anoka County Office of the Recorder on November 2, 2012. Id. Plaintiffs alleged there was no evidence that Hudson had the power to execute the October 6, 2012 Assignment of Mortgage because the mortgage had been extinguished by the sheriff's sale and Chase did not have any interest in the Property given the unrecorded assignment of the mortgage to Freddie Mac. Id., ¶ 24.

Plaintiffs claimed that on or about April 13, 2011, Usset received constructive notice that Chase had engaged in "unsafe and unsound" banking practices in conducting foreclosures via the Order and Consent Decree entered into by Chase. Id., ¶¶ 25, 26, Ex. 8 (Consent Order).  Therefore, plaintiffs asserted that Freddie Mac at all times knew, or had reason to know, that the various assignments of mortgage, notices of pendency, and powers of attorney were all void. Id., ¶ 27.  Plaintiffs maintain they are the owner of the Property, the Sheriff's Certificate is void, the foreclosure sale is void, and Usset conducted the void foreclosure. Id., ¶¶ 28-30.

Plaintiffs alleged the following causes of action:

In Count I, Determination of Adverse Claims, Minn. Stat. § 559.01, plaintiffs alleged a quiet title action seeking a determination regarding defendants' adverse interests in the Property.  Id., ¶¶ 31-36.  According to plaintiffs, in a quiet title action, the burden of proof is on the mortgagee asserting an adverse interest in the property, and that defendants must prove their title to the Mortgage by preponderance of the evidence.  Id., ¶¶ 34, 35.

In Count II, plaintiffs seek a declaratory judgment under Minn. Stat. § 555.02 that the various assignments of mortgage, notices of pendency, and powers of attorney are all void, and that plaintiffs remain the owner of the Property in fee title.  Id., ¶¶ 38, 39.

In Count III, alleging slander of title, plaintiffs asserted that Chase, through Usset, drafted and recorded documents that were false and not executed by legally authorized persons, and that Chase knew or should have known that the documents were false because unauthorized persons without authority executed the notices of pendency and the assignment of mortgage.  Id., ¶¶ 41-43.  Plaintiffs claimed that they had incurred attorney's fees in the amount of $5000 and court filing costs of $322 to address the slander of their title.  Id., ¶ 45.

As relief, plaintiffs sought: (1) a determination of adverse interest in the Property; (2) a declaration that the Sheriff's Certificate of Sale, the various assignments of mortgage, notices of pendency, and powers of attorney are all void; (3) a declaration that plaintiffs remain the owner of the Property in fee title; and (4) money damages.  Id., Prayer for Relief.

**B.  Defendants Federal Home Loans Mortgage Corporation and J.P. Morgan Chase Bank, N.A.'s Motion to Dismiss**

In lieu of answering, defendants Freddie Mac and Chase moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  Freddie Mac and Chase contended that as to the quiet title action, plaintiffs have not provided anything to support their claims that their adverse claims are invalid, other than labels and conclusions based on pure speculation.  See Defendants' Memorandum of Law in Support of Motion to Dismiss [Docket No. 7], p. 7.  According to Freddie Mac and Chase, the record of chain of title to the mortgage is unbroken and the foreclosure was proper based on the documents recorded with the Anoka County Office of the Recorder, which is prima facie evidence pursuant to Minn. Stat. § 580.19 that Chase complied with the requirements of law concerning the foreclosure.  Id.  Plaintiffs have offered nothing to rebut this presumption except unsupported labels and conclusions.  Id.

As to plaintiffs' allegations that every foreclosure-related document was executed by a person who lacked authority to do so, Freddie Mac and Chase asserted that plaintiffs' conclusory and speculative allegations are deficient under Iqbal[3] and cannot overcome that an acknowledgment made in a representative capacity is prima facie evidence that the instrument was executed and delivered with proper authority and as the act of the person or entity represented and identified in the instrument.  Id., p. 8 (citing Minn. Stat. § 358.50).  Freddie Mac and Chase maintained that the Eighth Circuit has rejected similarly plead quiet title claims.  Id., p. 9 (citing Karnatcheva v. JPMorgan Chase Bank, NA, 704 F.3d 545, 548 (8th Cir. 2013), cert. denied, 134 S.Ct. 72 (2013); Dunbar v. Wells Fargo Bank, N.A., 709 F.3d 1254, 1257 (8th Cir. 2013)).

---

[3]  Ashcroft v. Iqbal, 556 U.S. 662 (2009).

Freddie Mac and Chase also argued that plaintiffs' allegations regarding Freddie

Mac's interest in the mortgage is speculative. Id., pp. 10-11. The "Freddie Mac Look

Up" report attached to the Complaint, which purports to show that Freddie Mac acquired

the mortgage on May 23, 2007, does not identify plaintiffs or their mortgage. Id., p. 10.

Further, even if the Court considered the document, its language states "[f]or help with

your mortgage, contact your lender," and the language in the mortgage provides that

the "Lender is the mortgagee under this Security Instrument." Id. According to Freddie

Mac and Chase, this language contradicts plaintiffs' claim that Freddie Mac was the

mortgagee under plaintiffs' Mortgage. Id.

Likewise, plaintiffs' allegation that "Freddie Mac acquired the loan on May 23,

2007," (Complaint, ¶ 8), does not support a claim that Freddie Mac obtained legal title to

the mortgage. "[O]nly assignments of legal title of the security instrument must be

recorded in order to commence a foreclosure by advertisement." Id., pp. 10-11 (quoting

Jackson v. Mortgage Elect. Registration Sys., Inc., 770 N.W.2d 487, 501 (Minn. 2009)).

Here, there is no evidence or information alleged in the Complaint or in the attached

exhibits to suggest that Freddie Mac held legal title to the mortgage on May 23, 2007.

Id., p. 11.

As for plaintiffs' reliance on the requirements in a form Custodial Agreement,

Freddie Mac and Chase contended that this third-party document does not aid their

speculative allegations because (a) it is unexecuted; (b) it does not identify WAMU or

Chase as parties to an agreement; and (c) it does not state that plaintiffs' mortgage is

subject to the agreement. Id., p. 11. Mere speculation about what may have happened

pursuant to an agreement to which plaintiffs are not party, does not allow a plausible

inference when Freddie Mac and Chase present a facially valid record of assignment. Id., pp. 11-12 (citations omitted).

With regard to plaintiffs' challenge of the Assignment of Mortgage from Chase to Homeward Residential, Freddie Mac and Chase claimed that this assignment is irrelevant, as it was executed and recorded after the foreclosure sale, and Chase had the right to foreclose the mortgage. Id., p. 12. This is especially true where plaintiffs alleged in the Complaint that the foreclosure sale extinguished the mortgage. Id., p. 13. If the mortgage ceased to exist, the Assignment of Mortgage could not affect the validity of the sale. Id.

As to plaintiffs' claim for slander of title, after setting out the elements required to make out the claim under Minnesota law – a false statement maliciously published to others, which caused plaintiffs' pecuniary loss in the form of special damages – Freddie Mac and Chase argued that plaintiffs made no allegations of publication with malice, a required element of the slander of title claim. Id. Moreover, any slander of title claim based on the assertion that documents were executed by unauthorized persons not only fails under the Twombly[4] and Iqbal pleading standard, but the publicly-recorded documents and presumption afforded by Minn. Stat. § 358.50, show that the foreclosure documents were executed by authorized persons. . Id., p. 14.

Plaintiffs countered that where Chase failed to comply with the foreclosure-by-advertisement statute, Minn. Stat. § 580.32, the foreclosure of the Property is void. Plaintiffs' Memorandum in Opposition to Motion to Dismiss [Docket No. 11], p. 5. According to plaintiffs, "Minn. Stat. § 580.32 [sic] requires a person foreclosing a

---

[4]     Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

mortgage by advertisement to record a notice of the pendency of the foreclosure with the county recorder <u>before</u> the first date of publication of the foreclosure notice." <u>Id.</u>, (citing Minn. Stat. § 580.032 subd. 3) (emphasis in original).  Here, Freddie Mac and Chase have conceded that the Notice of Pendency and Power of Attorney to Foreclose was not recorded until September 7, 2012, after the date of first publication of the notice of foreclosure on July 27, 2012. <u>Id.</u>, p. 6.  While plaintiffs acknowledged that the public records reflect that a Notice of Pendency was recorded by Usset on June 21, 2012, plaintiffs claimed that the August 27, 2012 Power of Attorney does not operate to give Usset the authority to execute the June 21, 2012 Notice of Pendency. <u>Id.</u>, pp. 6-7. According to plaintiffs, this is sufficient to void the foreclosure. <u>Id.</u>, p. 7

As it to their quiet title action, plaintiffs maintained that all they had to allege was that they possessed the Property and that defendants were claiming some adverse estate or interest in it, and then the burden of proof shifted to Chase to prove the validity of its purported interest. <u>Id.</u>, pp. 7-10 (citations omitted).  According to plaintiffs, the Sheriff's Certificate does not carry this burden for Chase, as possession is <u>prima facie</u> evidence of their title to the property. <u>Id.</u>, p. 10.

Regarding the slander of tittle claim, plaintiffs argued that by alleging "(a) Defendants filed documents that contained false statements; (b) that they knew the statements were false, (c) that the statements were a disparagement of the plaintiff's's' title and as a result, and (d) the plaintiff has incurred attorney fees," they had adequately plead a slander of title claim. <u>Id.</u>, pp. 11-12.  Additionally, they submitted they had met the requirement for alleging malice, when they stated that Chase knew that the documents contained false information. <u>Id.</u>, p. 12.

In reply, Freddie Mac and Chase argued that they complied with Minnesota law governing foreclosures, Minn. Stat. §§ 580.032 and 580.05, by recording the June 21, 2012 Notice of Pendency on July 5, 2012, prior to the first date of publication of the notice of foreclosure sale on July 27, 2012, and by recording the Power of Attorney prior to the September 12, 2012 foreclosure sale of the Property pursuant. <u>See</u> Defendants' Reply Memorandum in Support of Motion to Dismiss Plaintiff's Complaint [Docket No. 14], pp. 2-3.

Freddie Mac and Chase also asserted that the Eighth Circuit has rejected plaintiffs' "shifting of burden of proof theory" as it relates to the quiet title claim, and that it is not sufficient to allege the elements of a quiet title claim without facts to support the adverse interest element of the claim. <u>Id.</u>, pp. 3-4.

Freddie Mac and Chase reiterated that the slander of title claim fails because the foreclosure documents are in compliance with Minnesota foreclosure statutes and belie any claim that they are false, and because plaintiffs have failed to adequately allege malice. <u>Id.</u>, pp. 4-5.

Finally, because plaintiffs failed to address the argument that they alleged no facts to support their claims that there are unrecorded assignments, Freddie Mac and Chase urged that plaintiffs' conclusory statements cannot survive their motion to dismiss.

### C.   <u>Homeward Residential, Inc.'s Motion to Dismiss</u>

In lieu of answering, defendant Homeward Residential moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  Homeward Residential argued that its motion should be granted because the only mention in the Complaint of it is that

"[n]early a month after the sheriffs sale, on October 6, 2012, the law firm of Peirson Patterson, LLP drafted an Assignment of Mortgage . . . assigning from JPMorgan Chase Bank, N.A to Homeward Residential, Inc. 'all beneficial interest . . . .'"  <u>See</u> Memorandum of Law in Support of Motion to Dismiss [Docket No. 15], pp. 3-4 (quoting Complaint, ¶ 23).  Based on the lack of allegations against it, Homeward asserted that the Complaint fails to state claim for relief.  <u>Id.</u>

Plaintiffs argued that Homeward Residential is a proper and necessary party to this litigation under their quiet title action, as it has a of-record interest in the Property that is likely invalid.  <u>See</u> Memorandum of Law in Opposition to Motion to Dismiss [Docket No. 20], pp. 4-5 (citation omitted).

In its reply, Homeward Residential argued that it is not an indispensable party because appropriate relief can accorded among the other parties.  <u>See</u> Reply Memorandum of Law in Support of Homeward Residential, Inc. Motion to Dismiss [Docket No. 21], pp. 1-2 (citations omitted).

## II.    STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaints must be taken as true.  <u>Ashley County, Ark. v. Pfizer, Inc.</u>, 552 F.3d 659, 665 (8th Cir. 2009).  In addition, a court must afford the plaintiff all reasonable inferences from those allegations.  <u>Blankenship v. USA Truck, Inc.</u>, 601 F.3d 852, 853 (8th Cir. 2010).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil

Procedure and meet the principles articulated by the United States Supreme Court in Iqbal and Twombly.

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than a unadorned, the-defendant-unlawfully-harmed-me-accusation." Iqbal, 556 U.S. at 678 (internal quotation marks and citations omitted). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S., at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 677 (quoting Twombly, 550 U.S. at 556). "[T]he plausibility standard, which requires a federal court complaint to 'state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Ritchie v. St. Louis Jewish Light, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted). "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

As a general rule, the Court may not consider materials "outside the pleadings" on a motion to dismiss, without converting the motion to dismiss to a motion for summary judgment. Fed. R. Civ. P. 12(d). "The court, however, 'may consider some

materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings,'" without converting the motion into one for summary judgment. See Little Gem Life Sciences, LLC v. Orphan Medical, Inc., 537 F.3d 913, 916 (8th Cir. 2008) (quoting Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citation and punctuation omitted).); see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003).

With these standards in mind, the Court turns to the defendants' motions to dismiss.

III. **DISCUSSION**

A. **Quiet Title**

In Minnesota, "[a]ny person in possession of real property personally. . . may bring an action against another who claims an estate or interest therein, or a lien thereon, adverse to the person bringing the action, for the purpose of determining such adverse claim and the rights of the parties, respectively." Minn. Stat. § 559.01. However, the fact of plaintiffs' possession of the Property and conclusory statements that defendants' adverse claims are invalid are insufficient to state a claim for relief. See Karnatcheva v. JPMorgan Chase Bank, NA, 704 F.3d 545, 548 (8th Cir. 2013), cert. denied, 134 S.Ct. 72 (2013) (affirming the district court's dismissal of the plaintiff's quiet-title claim "because the plaintiff's pleadings, on their face, have not provided anything to support their claim that the defendants' adverse claims are invalid, other than labels and conclusions, based on speculation that transfers affecting payees and

assignments of the notes were invalid."); <u>Yang Mee Thao-Xiong v. American Mortg.</u> <u>Corp.</u>, Civil No. 13-354 (MJD/TNL), 2013 WL 3788799, at *4 (D. Minn. July 18, 2013) (quoting <u>Novak v. JP Morgan Chase Bank, N.A.</u>, Civ. No. 12-589 (DSD/LIB), 2012 WL 3638513, at *4 (D. Minn. Aug. 23, 2012), <u>aff'd</u>, 518 F. App'x 498 (8th Cir. 2013)) (finding that plaintiffs "'must state facts sufficient to allow the court to draw the reasonable inference that . . . she is in possession and that a defendant claims a right or title to the property, but has no such right or title.'").

In addition, the Eighth Circuit in <u>Karnatcheva</u> has rejected the "burden of proof" argument advocated by plaintiffs. 704 F.3d at 548. As the court explained in <u>Gharwal:</u>

> <u>Karnatcheva</u> rejected that argument, specifically holding that § 559.01 and the other authority on which [plaintiff] relies 'are not state substantive standards that govern the success of a quiet title claim. <u>Karnatcheva</u>, 704 F.3d at 548. Whether or not the Eighth Circuit's holding was "error" is not for this Court to decide; <u>Karnatcheva</u> is binding precedent, and this Court must apply it. The Court notes, however, that although he was addressing a different issue, plaintiff's counsel himself has conceded in the past "that, under Fed. R. Civ. P. 11, a quiet-title claim must be supported by an objectively reasonable basis for believing that the defendant's asserted interest in the property is invalid." <u>Welk v GMAC Mortg., LLC</u>, 850 F. Supp.2d 976, 988 (D. Minn. 2012), aff'd, 720 F.3d 736 (8th Cir. 2013). Here, plaintiffs quiet title claims are based only on conclusory statements and speculation, but no facts. The claim fails under Rule 12(b)(6).

<u>Gharwal v. Federal Nat'l Mortg. Ass'n</u>, Civ. No. 13-685 (PJS/JSM), 2013 WL 4838904, at *3 (D. Minn. Sept. 11, 2013).

Further, plaintiffs' wholly unsupported statements about "adverse interests" in the Property in the form of an unrecorded assignment of mortgage from WAMU to Freddie Mac prior to foreclosure, and the alleged lack of legal authority of the individuals signing

the foreclosure documents to execute the documents,[5] will not save their Complaint. See Complaint, ¶¶ 10, 12, 13, 17, 20, 22.  While it is true that the "Eighth Circuit has yet to address whether a pleading based on 'information and belief' is sufficient to state a claim," LaCroix v. U.S. Bank, NA, Civ. No. 11-3236 (DSD/JJK), 2012 WL 2357602, at *6 (D. Minn. June 20, 2012), the Eighth Circuit and cases within this District have unequivocally held that conclusory allegations lacking in factual support are insufficient to satisfy the Rule 8 pleading standards or the standards described by the Supreme Court in Iqbal and Twombly.   See Karnatvcheva, 704 F.3d at 548; Sorem v. Bank of New York Mellon, Civ. No. 13-290 (DWF/JSM), 2013 WL 4611115, *2-3 (D. Minn. Aug. 29, 2013); Ko v. Mortgage Elec. Registration Sys., Civ. No. 13-596 (JRT/AJB), 2013 WL 4052680, at *2 (D. Minn. Aug. 9, 2013); Quale v. Aurora Loan Services, LLC, Civ. No. 13-621 (JNE/AJB), 2013 WL 3166584, *1 (D. Minn. June 20, 2013) (string citation omitted); Lara v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-676 (SRN/AJB), 2013 WL 3088728, at *3 (D. Minn. June 18, 2013); Schumacher v. Federal Home Loan Mortg. Corp., Civil No. 13-29 (DSD/FLN), 2013 WL 3033746, at *2 (D. Minn. June 17, 2013).

Indeed, plaintiffs' assertion that "[u]pon information and belief, prior to the Sheriff's Sale, JPMorgan Chase Bank, N.A. transferred the power of sale to Freddie Mac through an unrecorded assignment of mortgage," (Complaint, ¶ 22), is exactly the type of implausible allegation that Twombly and Iqbal prohibit.  See, e.g., Pope v. Fed Home Loan Mortgage Corp., Civ. No. 12-3094, 2013 WL 2251001, at *3 (D. Minn. May 22, 2013) (The Popes allege that "[u]pon information and belief, Freddie Mac acquired

---

[5]      Under Minn. Stat. § 358.50, an acknowledgment made in a representative capacity "is prima facie evidence" that the instrument or electronic record was executed and delivered with proper authority.

its interest in the [ ] mortgage prior to the commencement" of foreclosure proceedings but "[n]o assignment of mortgage from Wells to Freddie Mac appears in the records of the Ramsey County Recorder."  [ ] This is precisely the kind of implausible allegation that <u>Twombly</u> and <u>Iqbal</u> prohibit. The Popes ask the Court to assume that an assignment occurred because they allege it occurred. But there is a more plausible explanation for the absence of any assignment in the Ramsey County records: there was no such assignment. The Court need not accept as true implausible allegations, as offered by the Popes here. To the extent their claims depend on this alleged unrecorded assignment, those claims fail to state claims on which relief can be granted.").

Plaintiffs' reliance on the Freddie Mac screenshot attached to the Complaint, purporting to state that Freddie Mac owned "your mortgage" and acquired the mortgage on May 23, 2007, does not render plaintiffs' allegations that there was an unrecorded assignment of the mortgage by WAMU to Freddie Mac any less speculative.  The internet screen shot, (Complaint, Ex. 2), does not identify plaintiffs or their mortgage, thus, precluding the Court from drawing any inference, much less a reasonable inference, that WAMU secretly assigned a mortgage assignment to Freddie Mac or that the assignment was unrecorded, all in violation of Minn. Stat. § 580.02(3).  However, even assuming that does this screen shot does refer to plaintiffs' Property, all that it says is that Freddie Mac is the "owner" of the mortgage.  This does not mean that WAMU actually assigned the mortgage to Freddie Mac or that it no longer held legal title to the mortgage.  As the Supreme Court of Minnesota recognized in <u>Jackson v. Mortgage Electronic Registration Systems, Inc.</u>, 770 N.W.2d 487, 499-501 (Minn. 2009), it is common for one party to hold legal title to a mortgage on behalf of another party

who has "equitable ownership" of the mortgage. For example, mortgage servicers typically hold legal title to the mortgage on behalf of the equitable owner of the mortgage, usually the holder of the promissory note secured by the mortgage. Plaintiffs have simply not stated facts sufficient to allow the Court to draw the reasonable inference that WAMU secretly conveyed legal title to the mortgage to Freddie Mac in May 2007 and that there was an unrecorded assignment before foreclosure.  See Vollmer v. Federal Home Loan Mortg. Corp., Civil File No. 13-11 (MJD/FLN), 2013 WL 3280254, *3 (D. Minn. June 26, 2013) (rejected screen shot from the Freddie Mac website stating that Freddie Mac is the owner of your mortgage," as a basis for allowing the court to draw the reasonable inference that Wells Fargo secretly assigned and failed to record a mortgage assignment to Freddie Mac).

Likewise, plaintiffs' reliance on Freddie Mac's Custodial Agreement does not overcome the deficiencies of pleading in their Complaint.  For starters, the Custodial Agreement is an unexecuted form document that makes no reference to WAMU or Chase, to plaintiffs, or to plaintiffs' mortgage. Id., Ex. 3.  Consequently, this Court has no basis for assuming that this agreement applies to the mortgage in this case.

Second, the language relied upon by plaintiffs from the Custodial Agreement -- "[t]he Seller/Servicer must deliver to the Custodian a duly prepared and executed assignment of the security instrument from Seller/Servicer to Freddie Mac in recordable form but not recorded" – does not a provide a plausible inference that an assignment to Freddie Mac actually occurred. See, e.g., Richter v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-475 (ADM/JSM), 2013 WL 3223377, at *2 (D. Minn. June 25, 2013) (dismissing the quiet title claim, and stating "[s]imply quoting a Fannie Mae policy document does not

plausibly establish how Fannie Mae obtained an unrecorded interest in the Property in this case.  Plaintiffs' allegations do not rise above speculation."); Cheng Lee v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-180 (DWF/SER), 2013 WL 2631904, at *2 n.4 (D. Minn. June 12, 2013) ("The only fact even arguably cited in support of the conclusion that there is an unrecorded assignment is that Fannie Mae's Seller/Servicer Guides require that an assignment of mortgage be executed in favor of Fannie Mae.  This conclusory allegation is insufficient."); Dunbar, 853 F. Supp.2d at 848, aff'd, 709 F.3d 1257 (8th Cir. 2013) ("Plaintiffs appear to argue that an unrecorded assignment from Option One to Wells Fargo must exist that renders invalid the 2010 assignment from Option One to Wells Fargo. The PSAs do not, however, say that Option One actually assigned the mortgage years ago, only that it had agreed to do so.  Mere speculation about what may have happened does not allow a plausible inference when defendants present a facially valid record of assignment from Option One to Wells Fargo.  As a result, dismissal is warranted.").  In other words, the Custodial Agreement does not require an actual and present assignment from the servicer to Freddie Mac.  Rather, it simply requires the servicer to prepare an assignment document that can be recorded when and if the mortgage is assigned to Freddie Mac.

Third, even if the Custodial Agreement did govern plaintiffs' mortgage, plaintiffs lack standing to challenge a failure of any assignment required by this agreement, as they are not parties to it.  See Lara, 2013 WL 3088728, at *3 ("Plaintiffs' reliance on the Seller/Servicer Guides or Fannie Mae's Custodial Agreement is similarly unavailing. The Guide is, at best, a contract between Fannie Mae and its servicers. It is not for the benefit of Plaintiffs and imposes no duties on any entity vis-a-vis the borrower. The

Custodial Agreement, too, is not for the benefit of any borrower, but is an agreement between Fannie Mae and unknown entities. Even if Wells Fargo was a party to either of these documents and breached its obligations under the documents, that failure would be for Fannie Mae, not Plaintiffs, to prosecute."); <u>Segura v. Fed. Nat'l Mortg. Ass'n</u>, Civ. No. 13-531, 2013 WL 3034096, at *3 (D. Minn. June 17, 2013) ("Nor does the Seguras' reliance on the Seller/Servicer Guides or Fannie Mae's Custodial Agreement make their allegation less speculative. The Guide is, at best, a contract between Fannie Mae and its servicers. It is not for the benefit of the Seguras and imposes no duties on any entity vis-a-vis the borrower. The Custodial Agreement, too, is not for the benefit of any borrower, but is an agreement between Fannie Mae and unknown entities. Even if Wells Fargo was a party to either of these documents and breached its obligations under the documents, that failure would be for Fannie Mae, not the Seguras, to prosecute."); <u>Welk v. Federal Nat'l Mortg. Ass'n</u>, Civ. No. 12-2864 (SRN/TNL), 2013 WL 2155463, at *3 (D. Minn., May 17, 2013) ("[the] 'Guide' about which the Amended Complaint makes much hay is, at best, a contract between Fannie Mae and its servicers. It is not for the benefit of [plaintiff] and imposes no duties on any entity vis-a-vis the borrower. So even if Wells Fargo failed to comply with its purported obligations under the 'Guide,' such a failure would be for Fannie Mae, not [plaintiff], to prosecute.").

Fourth, contrary to plaintiffs' contentions, Chase did comply with the requirements of Minn. Stat. § 580.032 and Minn. Stat. § 580.05.  Minn. Stat. § 580.032 provides:

> Notice of pendency. A person foreclosing a mortgage by advertisement shall record a notice of the pendency of the foreclosure with the county recorder or registrar of titles in the county in which the property is located <u>before the first</u>

> date of publication of the foreclosure notice but not more
> than six months before the first date of publication.

Minn. Stat. § 580.032, subd. 3 (emphasis added).

In this case, Chase, through Usset, recorded the June 21, 2012 Notice of

Pendency on July 5, 2012, which was prior to the first date of publication of the notice of

foreclosure on July 27, 2012.  See Complaint, ¶¶ 16, Exs. 4 (June 21, 2012 Notice of

Pendency), 6 (Record of Foreclosure Sale).

Minn. Stat. § 580.05 states:

> When an attorney at law is employed to conduct such
> foreclosure, the authority of the attorney at law shall appear
> by power of attorney executed and acknowledged by the
> mortgagee or assignee of the mortgage in the same manner
> as a conveyance, and recorded prior to the sale in the
> county where the foreclosure proceedings are had. If such
> attorney be employed on behalf of such mortgagee or
> assignee by an attorney in fact, the attorney's authority shall
> likewise be evidenced by recorded power.

Minn. Stat. § 580.05 (emphasis added).

On September 7, 2012, a Power of Attorney to Foreclose Mortgage was

recorded that authorized Usset to foreclose the mortgage and to bid for the Property at

the foreclosure sale.  Id., Ex. 5 (August 30, 2013 Notice of Pendency and Power of

Foreclosure).  The foreclosure sale on the Property occurred on September 12, 2013.

Id., Ex. 6 (Record of Foreclosure Sale).  As such, the Power of Attorney to foreclose the

mortgage and to bid for the Property was recorded prior to the sale of the Property at

the Sheriff's Sale, as required by Minn. Stat. § 580.05.  See Smith v. Wells Fargo Bank,

N.A., Civil No.13-0439 (SRN/TNL), 2013 WL 5720150, at *3 (D. Minn. Oct. 21, 2013)

("Plaintiff claims that no valid power of attorney existed when the law firm of Shapiro &

Zielke, LLP, created the Notice of Sale and caused it to be published, because the

Power of Attorney was executed after the date of the Notice of Sale and after the date of the first publication of the Notice of Sale. However, the relevant statute does not dictate when the power of attorney must be executed. Rather, it requires only that the power of attorney be recorded prior to the foreclosure sale. Here, the Power of Attorney was recorded on April 26, 2012, and the property was sold at a foreclosure sale on August 7, 2012. Thus, Defendant complied with the statutory requirements.").

Lastly, the Court concludes that the Assignment of Mortgage from Chase to Homeward Residential is irrelevant to plaintiffs' quiet title claim since plaintiffs have not set forth a viable claim against Chase as it pertains to the validity of the foreclosure of the mortgage.  In sum, plaintiffs have not successfully challenged Chase's ability to foreclose the mortgage, and therefore, plaintiffs have no interest in what remains of the mortgage after the foreclosure.

For all the reasons stated above, the Court finds that Chase and Freddie Mac's motions to dismiss the quiet title actions against them should be granted.  In addition, given whatever interest Homeward Residential acquired from Chase took place after the foreclosure sale, plaintiffs have failed to state a viable quiet title claim against Homeward Residential.  On this basis, Homeward Residential's motion to dismiss the quiet title claim should be granted.

**B.**     **Slander of Title**[6]

To state a claim for slander of title, a plaintiff must allege facts that show: (1) there was a false statement concerning the real property owned by the plaintiff; (2) the false statement was published to others; (3) the false statement was published

---

[6]     As pled, this claim only alleges slander of title against Chase. See Complaint, ¶¶ 40-45.

maliciously; and (4) the publication of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages.  Paidar v. Hughes, 615 N.W.2d 276, 279-80 (Minn. 2000) (citation omitted).  To plead malice, plaintiffs "must raise factual allegations sufficient to create a plausible claim that at least one of the [  ] parties acted with a reckless disregard for the truth, 'despite a high degree of awareness of probable falsity.'"  Dunbar, 709 F.3d at 1258 (quoting Brickner v. One Land Dev. Co., 742 N.W.2d 706, 711 (Minn. Ct. App. 2007)); see also Quevli Farms, Inc. v. Union Sav. Bank & Trust Co., 178 Minn. 27, 226 N.W. 191, 192 (Minn. 1929) (concluding that to be a malicious statement, it must be a "groundless disparagement of the plaintiff's title or property . . . made without probable cause.").  The filing of an instrument known to be inoperative is a false statement that, if done maliciously, constitutes slander of title.  Kelly v. First State Bank of Rothsay, 177 N.W. 347, 347 (Minn. 1920).

Here, plaintiffs not only did not allege that Chase acted with malice, but more significantly, they alleged no facts from which this Court could even infer that Chase made a false statement or acted maliciously.  Rather, plaintiffs only asserted that "defendant knew or should have known" that unspecified documents were false and that these documents were false because they were executed without legal authority.  See Complaint, ¶¶ 42-43.  These allegations standing alone, without any factual support, fail to state a slander of title claim.  See Ko, 2013 WL 4052680, at *4 ("Ko alleges that Shapiro drafted and recorded documents that it knew were false because they were executed without the proper authority. But Ko fails to allege that Shapiro acted with malice. Because Ko fails to allege malice, he has not stated a claim for slander of title,

and this claim will be dismissed.") (internal citation omitted); Lara, 2013 WL 3088728, at *3 (dismissing slander of title claim based on allegation that individuals signing documents lacked authority to do so and stating "[plaintiffs pleaded no plausible facts to support their allegations regarding signing authority.").

Additionally, even assuming that documents recorded as to the Property are technically false, this does not amount to a cloud on the title of the Property where plaintiffs have clouded the title based on their default.  See Pope, 2013 WL 2251001, at *4 ("An unauthorized assignment may be technically false, but it does not cloud the title to property on which the mortgagee has undisputedly defaulted.  The only cloud on the title of the Popes' property is a cloud of their own making: they did not make the payments due under their mortgage and as a result, they lost their property through foreclosure.").

For all of these reasons, Chase's motion to dismiss plaintiffs' slander of title claim should be granted.[7]

### C.    Declaratory Judgment

A declaratory judgment is a remedy, not a cause of action.  See, e.g., Onvoy, Inc. v. ALLETE, Inc., 736 N.W.2d 611, 617-618 (Minn. 2007) (a declaratory judgment action may be maintained only where there is a justiciable controversy); Buck v. American

---

[7]    The Court notes that a slander of tile claim is subject to the heightened pleading standard of Fed. R. Civ. P. 9(b).  See Murphy v. Aurora Loan Servs., LLC, 699 F.3d 1027, 1032 (8th Cir. 2012) (Rule 9(b) applies to slander of title claims); see also Ko, 2013 WL 3088728, at *4; Pope, 2013 WL 2251001, at *4; Haubrich v. U.S. Bank Nat'l Ass'n, Civ. No. 12-565 (DSD/TNL), 2012 WL 3612023, at *6 (D. Minn. Aug. 21, 2012), aff'd, 720 F.3d 979 (8th Cir. 2013).  Chase did not argue in favor of dismissal based on plaintiffs' failure to meet this standard.  Suffice it to say, however, having failed to plead any facts to support a slander of title claim, the claim also fails to meet the Rule 9(b) standard.

Airlines, Inc., 476 F.3d 29, 33 n.3 (1st Cir. 2007) (noting that the Declaratory Judgment Act, 28 U.S.C. § 2201 "creates a remedy, not a cause of action").  In light of the Court's conclusion that plaintiffs' substantive claims must be dismissed under Rule 12(b)(6), "[he is] left with a remedy in search of right."  Scanlon v. Northwest Mortg., Inc., Civ. No. 11-3128 (MJD/TNL), 2012 WL 2885131, *7 (D. Minn. July 13, 2012); see also Lara, 2013 WL 3088728, at *3 (finding that where plaintiff had failed to state a substantive claim, the Amended Complaint also failed to state a claim for declaratory judgment) (citing Weavewood, Inc. v. S & P Home Invs., LLC, 821 N.W.2d 576, [579] (Minn. 2012) ("A declaratory judgment is a procedural device through which a party's existing legal rights may be vindicated so long as a justiciable controversy exists.")).

Plaintiffs' claim for declaratory judgment must be dismissed because there is no legal basis for affording the remedy.

## IV.   RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.    Defendants Home Loans Mortgage Corporation and J.P. Morgan Chase Bank, N.A.'s Motion to Dismiss [Docket No. 5] be **GRANTED**.

2.    Homeward Residential, Inc.'s Motion to Dismiss [Docket No. 13] be **GRANTED**.

3.    This matter be dismissed with prejudice.[8]

---

[8]    "Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend."  Michaelis v. Neb. State Bar Ass'n., 717 F.2d 437, 438-39 (8th Cir. 1983).   Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate.   That is the case here.   See McLean v. United States, 566 F.3d 391, 400 (4th Cir. 2009) ("to the extent . . . that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court

Dated: December 19, 2013

*Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

## **NOTICE**

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **January 2, 2014**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

---

would err in designating [a] dismissal to be without prejudice. Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend."); McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc., 339 F.3d 1087, 1096 (9th Cir. 2003) (dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment"); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (a pro se litigant should be given chance to amend complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."); Ikechi v. Verizon Wireless, Civ. No. 10-4554 (JNE/SER), 2011 WL 2118797, at *5, n. 6 (D. Minn. April 7, 2011) (recommending dismissal with prejudice of plaintiff's fraud claims because it was unlikely that plaintiff could cure the defective pleading on re-pleading), 2011 WL 2118791, *3 (D. Minn. May 25, 2011) (adopting the Report and Recommendation of Magistrate Judge Rau regarding dismissal of plaintiff's fraud claims for failure to satisfy the particularity requirement of Rule 9(b)).